UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

_____

HEATHER WAGNER et al.,                  :
                                        :
            Plaintiffs,                 :
      v.                                :   No. 5:14-cv-07326
                                        :
ALLSTATE INSURANCE COMPANY,             :
                                        :
            Defendant.                  :
_____

### MEMORANDUM OPINION AND ORDER

**Defendant's Motion for Reconsideration, ECF No. 26 - Denied**
**Plaintiffs' Motion to Compel, ECF No. 27 – Granted in Part**

Joseph F. Leeson, Jr.                                           January 19, 2016
**United States District Judge**

### I.     Introduction

In December 2009, a vehicle operated by Plaintiff Heather Wagner collided with another vehicle on a road in Tremont Township, Pennsylvania. Plaintiffs sought recourse from the other driver, and with the consent of their insurer, Defendant Allstate Insurance Company, Plaintiffs settled with the other driver in return for a $50,000 insurance payment—the policy limit—from the driver's insurer. Plaintiffs then turned to Allstate to seek underinsured motorist benefits under their own insurance policy. The two sides were unable to come to terms on a proper measure of benefits, and this suit followed. Plaintiffs claim that Allstate's failure to pay them the amount of benefits they seek constitutes a breach of their insurance agreement, and they also claim that Allstate violated Pennsylvania law by failing to assess their claim for benefits in good faith.[1]

---

[1]     Claims that insurers acted in bad faith arise under Pennsylvania statutory law. See 42 Pa. Stat. and Cons. Stat. Ann. § 8371 (West 2007).

1

The parties engaged in approximately two months of discovery before notifying the Court of a dispute over the merits of work product objections that Allstate raised to certain discovery Plaintiffs sought in connection with their bad faith claim. Allstate contends that the only way this dispute can be resolved without prejudicing one of the parties is for the Court to stay all proceedings on the bad faith claim until the breach of contract claim can be resolved. Because Allstate has not shown that a stay of the bad faith claim is needed to avoid prejudice or that doing so would be more convenient, economical, or expeditious, the Court declines to do so.

The Court also declines to order Allstate to disclose the information Plaintiffs seek over Allstate's work product objections. Allstate is entitled to invoke the work product doctrine, and because the parties have failed to provide the Court with sufficient information to assess the precise boundaries of the protection to which Allstate is entitled, it will not be compelled to respond to the discovery requests at this time, with one exception that shall be explained herein.

## II.     Background

Two months before the discovery dispute that now brings the parties before the Court, Allstate had asked the Court to separate the breach of contract claim from the bad faith claim and stay all proceedings on the bad faith claim, including discovery, until after the breach of contract claim could be resolved.[2] Allstate expressed concern that if the claims proceeded simultaneously through discovery, a conflict would arise between Allstate's need to protect against the disclosure of work product it created in connection with the dispute over the valuation of

---

[2]     Allstate characterized its request as one for the Court to sever Plaintiffs' bad faith claim, but what Allstate actually sought was for the Court to separate Plaintiffs' claims for the purposes of all pretrial proceedings and trial, not a severance of Plaintiffs' claims into two separate actions. See White v. ABCO Eng'g Corp., 199 F.3d 140, 145 n.6 (3d Cir. 1999) ("A separation pursuant to Rule 42(b) separates elements of the complaint for trial, but all the aspects 'remain[] part of one single action which would result in a single judgment.' On the other hand, if claims are severed pursuant to Rule 21 they 'become independent actions with separate judgments entered in each.'" (citation omitted) (quoting Chrysler Credit Corp. v. Cty. Chrysler, Inc., 928 F.2d 1509, 1519 (10th Cir. 1991))); 9A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2387 (3d ed. 2008) (observing that the distinction between the procedure authorized by Rule 42(b) and severance under Rule 21 "often is obscured in practice since at times the courts talk of 'separate trial' and 'severance' interchangeably").

Plaintiffs' claim for underinsured motorist benefits and Plaintiffs' need for information about how Allstate assessed and valued their claim for underinsured motorist benefits in order to litigate their bad faith claim, which would likely include some of that work product. Allstate was also concerned that presentation at trial of evidence of how Allstate valued Plaintiffs' claim for underinsured motorist benefits—evidence that would be relevant to the question of whether Allstate acted in bad faith—would color the jury's own valuation of those benefits, which would taint the jury's assessment of whether Allstate breached the insurance agreement. Allstate also feared that the jury might confuse the issues relevant to the breach of contract claim with those relevant to the bad faith claim.

The Honorable Juan R. Sánchez, to whom this case was previously assigned, denied Defendant's request to separate the claims and stay all proceedings on Plaintiffs' bad faith claim. See Order, Feb. 9, 2015, ECF No. 13. But while Judge Sánchez ordered the claims to proceed to trial simultaneously, he suggested that bifurcation of the trial may be appropriate in light of the concerns that Allstate raised and expressed his intent to revisit that topic prior to trial.[3]

### III. The present motions

On April 15, 2015, after this case had been reassigned to the undersigned, the Court conducted a telephone status conference concerning the aforementioned discovery dispute. Specifically—as Allstate foresaw—the parties found themselves in a dispute over whether certain information that Plaintiffs believed to be relevant to their bad faith claim should be protected from disclosure as work product that Allstate prepared in anticipation of litigation over the claim for underinsured motorist benefits. At the conclusion of the status conference, the Court directed the parties to each file a motion: Plaintiffs were directed to file a motion to compel Allstate to respond to their discovery requests, while Allstate was directed to file a

---

[3]     See Argument Tr. 22:13-25, ECF No. 23.

3

motion asking the Court to revisit its previous decision to deny Allstate's request to stay the bad faith claim.

While Plaintiffs maintain that their two claims should proceed to trial simultaneously, they now appear to acknowledge the propriety of separating their claims for trial.[4] Doing so would resolve most of Allstate's concerns; namely, that presenting the two claims together may confuse the jury and prejudice the jury's assessment of the breach of contract claim.[5] See Craker v. State Farm Mut. Auto Ins. Co., No. 11-0225, 2011 WL 4565582, at *2 (W.D. Pa. Sept. 29, 2011) (observing that an insurer's concern about shielding a jury from "potentially unfavorable evidence relevant to the bad faith claim" could be resolved by holding a phased trial). The only concern that a phased trial would not resolve is Allstate's contention that failing to stay the bad faith claim until the resolution of the breach of contract claim "will inevitably prejudice one side or the other" during the course of discovery,[6] because either Allstate will be required to forfeit its work product protection to allow Plaintiffs to fully litigate their bad faith claim, or Plaintiffs will be deprived of information they need to litigate their bad faith claim if Allstate's work product objections are sustained.

A decision to stay discovery and other pretrial proceedings on the bad faith claim would have the effect of requiring Plaintiffs to try their case twice to two different juries. If discovery were to proceed simultaneously, the Court could conduct a phased trial of the two claims before the same jury, but if discovery on Plaintiffs' bad faith claim is stayed until the resolution of the breach of contract claim, the Court must conduct two separate jury trials. Whether the bad faith claim should be stayed therefore turns on the same considerations the Court would be required to

---

[4] Pl.'s Mot. Compel ¶¶ 5-6 ("At the time of the conference before the Court, Judge Sánchez advised the parties that trial, not discovery, would be bifurcated . . . . By so ruling, Judge Sánchez fashioned a remedy that . . . foster[s] the goals of fairness and judicial economy.")
[5] See id. at 12-13.
[6] Mem. Supp. Def.'s Mot. Reconsider 4-5, ECF No. 26.

4

consider before deciding to order separate trials under Federal Rule of Civil Procedure 42(b). Those considerations follow.

**IV.    The Court declines to exercise its discretion to stay Plaintiffs' bad faith claim.**

"For convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims." Fed. R. Civ. P. 42(b). While bifurcation is "encouraged where experience has demonstrated its worth," doing so is not routine. See Lis v. Robert Packer Hosp., 579 F.2d 819, 824 (3d Cir. 1978) (internal quotation mark omitted) (quoting Fed. R. Civ. P. 42(b) advisory committee's note to 1966 amendment). The court must make an independent determination that separate trials are appropriate for the case at hand, see Franklin Music Co. v. Am. Broad. Cos., 616 F.2d 528, 538 (3d Cir. 1979), because "the decision to bifurcate Vel non is a matter to be determined on a case-by-case basis and must be subject to an informed discretion by the trial judge in each instance," Robert Packer, 579 F.2d at 824 (citing Idzojtic v. Pa. R.R. Co., 456 F.2d 1228, 1230 (3d Cir. 1971)) (concluding that a routine order of bifurcation in certain classes of cases would be "at odds with [the court's] requirement that discretion be exercised and seems to run counter to the intention of the rule drafters"). With those considerations in mind, the decision is ultimately one that lies within the broad discretion of the trial court. See Robert Packer, 579 F.2d at 824 (quoting 9 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2392).

Allstate focuses primarily on the question of prejudice. Allstate fears that if the claims proceed through discovery simultaneously, it will have to forfeit protection for work product that it prepared in anticipation of litigating Plaintiffs' breach of contract claim because that information may be relevant to the bad faith claim (and therefore discoverable). But as Allstate

5

itself recognizes, a "mere claim of bad faith is not enough to shatter the work-product privilege." Mem. Supp. Def.'s Mot. Reconsider 5 n.1 (quoting Borgia v. State Farm Mut. Auto. Ins., No. 14-3149, 2014 WL 4375643, *3 (E.D. Pa. Sept. 3, 2014)). The Federal Rules of Civil Procedure and longstanding judicial precedent protect work product from disclosure—protections that do not disappear merely because work product prepared in anticipation of litigation over one claim may also be relevant to a second claim. Allowing the claims to proceed simultaneously simply means that Allstate will be called upon to prove its entitlement to work product protection—an endeavor that Allstate could avoid if the bad faith claim were to be stayed—and that does not justify the necessary expenditure of judicial resources and time. See Amitie One Condo. Ass'n v. Nationwide Prop. & Cas. Ins. Co., No. 1:07-CV-1756, 2010 WL 1052911, at *1 n.3 (M.D. Pa. Mar. 22, 2010) (rejecting an insurer's request to stay a bad faith claim in order to avoid work product disputes, because the court was "not persuaded that the mere existence of such discovery disputes warrants a stay").

    The parties facing the prospect of prejudice under these circumstances are Plaintiffs, not Allstate. If discovery proceeds on the two claims simultaneously, Plaintiffs may be deprived of information that Allstate would otherwise be willing to provide without objection, while a stay of the bad faith claim would subject Plaintiffs to the time and expense of having to participate in two separate rounds of discovery (and inevitable motion practice) accompanied by two separate jury trials. For Plaintiffs, neither alternative is free from hardship. By opposing Allstate's request to stay the bad faith claim, they have taken the position that the former represents the lesser of these two evils, and Allstate, which bears the burden of demonstrating that separating the claims is proper, see Reading Tube Corp. v. Emp'rs Ins. Co. of Wausau, 944 F. Supp. 398, 404 (E.D.

Pa. 1996) (citing McCrae v. Pittsburgh Corning Corp., 97 F.R.D. 490, 492 (E.D. Pa. 1983)), has not shown otherwise.

With respect to Rule 42(b)'s other considerations, Allstate refers to the arguments it previously made to Judge Sánchez to suggest that staying the bad faith claim may in fact be the more economical choice. Allstate suggests that "it is possible that a jury determination on Plaintiff[s'] [breach of contract] claims would make the bad faith claim moot,"[7] meaning that postponing the resolution of that claim might conserve judicial resources. The likelihood of that outcome occurring in this case, however, is far from clear. While a bad faith claim will frequently fail if the insurer prevails on the underlying breach of contract action, see Rohm & Haas, 2008 WL 2517176, at *2, "[c]ourts have extended the concept of 'bad faith' beyond an insured's denial of a claim in several limited areas," Nw. Mut. Life Ins. v. Babayan, 430 F.3d 121, 137 (3d Cir. 2005). One of those areas concerns insurers that unreasonably delay the evaluation of their insureds' claims, even if the insurer's ultimate assessment of the claim proves to be correct. See Willow Inn, Inc. v. Pub. Serv. Mut. Ins., 399 F.3d 224, 235 (3d Cir. 2005) (citing Klinger v. State Farm Mut. Auto. Ins., 115 F.3d 230, 236 (3d Cir. 1997)) ("Pennsylvania's bad faith statute provides insurance claimants a means of redressing unreasonable delays by their insurers."); see also O'Donnell ex rel. Mitro v. Allstate Ins., 1999 PA Super 161, ¶ 15 ("It is now clear, however, that section 8371 is not restricted to an insurer's bad faith in denying a claim. An action for bad faith may also extend to the insurer's investigative practices."). In this case, much of Plaintiffs' bad faith claim is focused on their contention that Allstate failed to promptly evaluate their claim for underinsured motorist benefits. See Pls.' Mem. Opp'n Mot. Sever and Stay 5-14 (recounting Plaintiffs' allegations that Allstate repeatedly represented to Plaintiffs that the investigation of their claim for benefits

---

[7] See Def.'s Mem. Supp. Mot. Sever and Stay 13.

would be completed within 200 days, but that the investigation eventually spanned nearly three years). A verdict in Allstate's favor on the breach of contract claim may not, therefore, obviate the need to try the bad faith claim.

Staying the bad faith claim therefore does little to serve the interests of convenience, economy, or expedition. "Bifurcation would essentially double the life of this action requiring a second discovery period, more dispositive motions, more pretrial motions, and a completely separate second trial." See Griffith v. Allstate Ins. Co., 90 F. Supp. 3d 344, 347 (M.D. Pa. 2014). Allstate is undoubtedly correct that the two claims present legal issues that are separate and distinct,[8] but Plaintiffs are equally correct that the facts pertinent to each claim overlap in many respects.[9] While the focus of the bad faith claim is on Allstate's conduct, rather than the underlying events, Allstate's investigation did not occur in a vacuum. Whether Allstate's investigation was performed in good faith must be determined by reference to the circumstances surrounding the automobile accident and the nature of the injuries that Plaintiffs suffered. Presenting that information to a second jury convened to hear the bad faith claim would duplicate in many respects the presentation to the first jury. "Separating potentially overlapping discovery and trials . . . would be the 'opposite of "expedition resolution of the litigation"'" See Rohm & Haas Co. v. Utica Mut. Ins., No. 07-584, 2008 WL 2517176, at *4 (E.D. Pa. June 23, 2008) (quoting Frederick & Emily's, Inc. v. Westfield Grp., No. 03-CV-6589, 2004 WL 1925007, at *7-8 (Aug. 27, 2004)). Because Allstate has failed to show that staying the bad faith claim and holding separate jury trials is needed to avoid prejudice or to serve the interests of convenience, economy, or expedition, Plaintiffs claims shall proceed simultaneously.

---

[8] See Def.'s Mem. Supp. Mot. Sever and Stay 1.
[9] See Pls.' Mem. Opp'n Mot. Sever and Stay 41-43, ECF No. 10-2.

With this decision, this Court joins with the sizeable majority of the federal district courts in Pennsylvania that have refused to stay bad faith claims against insurers until the underlying coverage claims can be resolved.[10] Allstate points to the fact that Pennsylvania state courts have, with some frequency, agreed to stay bad faith claims,[11] but "the Commonwealth and federal district courts have developed their bad-faith jurisprudence along starkly different lines." Cioffi,

---

[10]  See, e.g., Cioffi v. Metro. Grp. Prop. & Cas. Ins. Co., No. 2:14-cv-04395, slip op. at 6 (E.D. Pa. Sept. 10, 2014) (observing that the federal district courts in Pennsylvania have "routinely held [that] postponing discovery until [the coverage claim] is resolved only delays the resolution and causes inefficiencies and increased costs for the parties"); Griffith, 90 F. Supp. 3d at 347-48 (finding the bad faith claim to be intertwined with the breach of contract claim and observing that staying the bad faith claim would "essentially double the life of [the] action"); Cooper v. Metlife Auto & Home, No. 13-687, 2013 WL 4010998, at *3 (W.D. Pa. Aug. 6, 2013) (recognizing the existence of a "substantial overlap in issues and evidence" that counseled against a stay); Craker, 2011 WL 4565582, at *2-3 (recognizing that a stay would necessitate two discovery periods accompanied by other inefficiencies and increased costs); Scotti v. USAA Cas. Ins. Co., No. 3:10cv1538, 2011 WL 616008, at *3 (M.D. Pa. Feb. 11, 2011) (finding that "the interests of judicial economy would be better served by taking discovery on the two claims simultaneously, rather than potentially having to take discovery first on [plaintiff's] breach of contract claim and then again on her bad faith claim"); Yellowbird Bus Co. v. Lexington Ins. Co., No. 09-5835, 2010 WL 2766987, at *8 (E.D. Pa. July 12, 2010) (finding that discovery pertaining to the breach of contract claim would substantially overlap with the bad faith claim); Amitie One, 2010 WL 1052911, at *1 & n.7 (finding "considerations of convenience and economy" to outweigh any benefits of staying the bad faith claim, with particular emphasis on the overlap between the bad faith claim and a request for a declaratory judgment on the question of coverage); Calestini v. Progressive Cas. Ins. Co., No. 3:09-cv-01679, slip op. at 1-2 (M.D. Pa. Dec. 16, 2009) (finding that the insurer would not suffer any prejudice if the bad faith claim proceeded through discovery simultaneously with the coverage claim); Rohm & Haas Co. v. Utica Mut. Ins. Co., No. 07-584, 2008 WL 2517176, *4 (E.D. Pa. June 23, 2008) (recognizing that "discovery on the duty to defend and bad faith claims will concern much of or the same or related evidence"); Frederick & Emily's, Inc. v. Westfield Grp., No. Civ.A. 03-CV-6589, 2004 WL 1925007, at *2 (E.D. Pa. Aug. 27, 2004) (finding that "all the factors weigh heavily against severance"); Nathanson v. Aetna Cas. & Sur. Co., No. CIV.A. 01-CV-3377, 2001 WL 1392165, at *1 (E.D. Pa. Nov. 7, 2001) (concluding that a stay "would be likely to lead to additional inconvenience and delay, not less"); Sickora v. Nw. Mut. Life Ins. Co., No. CIV. A. 00-6194, at *2 (E.D. Pa. Oct. 10, 2001) (concluding that the insurer failed to show that bifurcation of the litigation would be more convenient, economical, or necessary to avoid prejudice); Zurich Ins. Co. v. Health Sys. Integration, Inc., No. CIV. A. 97-4994, 1998 WL 211749, at *3 (E.D. Pa. Apr. 30, 1998) (finding the possibility that resolution of the coverage dispute would render the bad faith claim moot to be insufficient to justify a stay). But see Moninghoff v. Tillet, No. 2:11-cv-07406, slip op. at 1-2 (E.D. Pa. June 27, 2012) (concluding that "it made[] sense to separate out the [underinsured motorist] claims from the bad faith claims in [that] matter," because of the possibility that resolution of the coverage claim could render the bad faith claim moot and because of the difference in scope of discovery necessary to resolve each claim); Reinhart v. Progressive Ins. Co., No. 5:09-cv-01167, slip op. at 1-2 (E.D. Pa. Apr. 16, 2009) (establishing, without comment, a schedule that stayed a bad faith claim until the resolution of the underlying coverage claim). This survey is necessarily limited to those decisions that have been reported, or published in an electronic database, except for the few unpublished orders that the parties have brought to the Court's attention.

   Allstate also cites a scheduling order entered in Weaver v. Allstate Ins. Co., No. 5:11-cv-07549 (E.D. Pa. Mar. 21, 2012), which established a phased discovery plan for the plaintiff's coverage claim and bad faith claim, but the parties in that case had "agreed that plaintiff's breach of contract claim . . . should be severed from Plaintiff's bad faith claim" and jointly proposed a phased discovery plan and separate trials of the two claims. See Report of Rule 26(F) Meeting at 3, Weaver v. Allstate Ins. Co., No. 5:11-cv-07549 (E.D. Pa. Mar. 13, 2012), ECF No. 18.

[11]  See Daniel E. Cummins, Post-Koken Scorecard, Tort Talk (Nov. 15, 2015), http://www.torttalk.com/2009/ 12/post-koken-scorecard.html (collecting decisions of the Pennsylvania state and federal courts on, among other matters, requests to separate bad faith claims from underlying coverage disputes).

9

slip op. at 5. This is not necessarily due to a difference of opinion, but rather can be attributed at least in part to the fact that there is no right to have a bad faith claim heard by a jury in the Pennsylvania state courts. See Cioffi, slip op. at 5 (attributing the difference of approach between the federal and state courts to "one simple reason: the Seventh Amendment jury right does not apply to state trials"); Mishoe v. Erie Ins. Co., 824 A.2d 1153 (Pa. 2003). While a state court's decision to stay a bad faith claim still results in a measure of delay, doing so does not mean that the parties must endure two separate jury trials. Instead, after the underlying coverage dispute is tried to a jury, the bad faith claim can later be heard by the same judge who presided over the jury trial. See Dunkelberger v. Erie Ins. Co., No. 2010-01956, 2011 WL 7678646 (Pa. Ct. C.P. Jan. 24, 2011) (concluding that staying a bad faith claim was appropriate in part because "the same Judge who presides over the [underinsured motorist] jury trial will be able to preside over the subsequent bad faith bench trial," and the "preservation of the Trial Judge's notes supplemented with transcripts and documentary evidence will be sufficient to afford the Trial Judge with enough information and memory to properly adjudicate the bad faith claim"). When the Pennsylvania state courts weigh the relative merits of staying a bad faith claim, the burden that the stay would impose on the parties does not tip the scale as heavily.

**V.      Plaintiffs' motion to compel is granted in part.**

Having decided that Plaintiffs' claims shall proceed through discovery simultaneously, the next question is whether Allstate properly invoked the work product doctrine in response to Plaintiffs' requests for discovery in connection with their bad faith claim. "Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or

for trial by or for another party . . . ." Fed. R. Civ. P. 26(b)(3)(A).[12] Whether the discovery sought was prepared in anticipation of litigation depends upon whether, "in light of the nature of the [discovery] and the factual situation in the particular case, the [discovery] can fairly be said to have been prepared or obtained because of the prospect of litigation." Martin v. Bally's Park Place Hotel & Casino, 983 F.2d 1252, 1260 (3d Cir. 1993) (quoting In re Grand Jury Proceedings, 604 F.2d 798, 803 (3d Cir. 1979)). Because work product protection extends only to materials prepared in anticipation of litigation, materials assembled in the ordinary course of business are not protected. See id. (quoting Fed. R. Civ. P. 26 advisory committee's note to 1970 amendment).

"Because insurance companies are required to evaluate claims made by their insureds in the ordinary course of their business, 'discovery disputes involving an insurance company's claims file often present problems for the parties.'" Borgia v. State Farm Mut. Auto Ins. Co., No. 14-3149, 2014 WL 4375643, at *3 (Sept. 3, 2014) (quoting Garvey v. Nat'l Grange Mut. Ins. Co., 167 F.R.D. 391, 394 (E.D. Pa. 1996)); 8 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2024 (3d ed. 2010) ("Reports prepared by or for insurers present particular difficulties as responding to claims and preparing for resulting litigation are significant parts of the ordinary business of insurers."). The Borgia court concisely summarized the application of the work product doctrine to disputes between insurers and their insureds:

> As numerous courts have recognized, "[a]n insurance company cannot reasonably argue that the entirety of its claims files are accumulated in anticipation of litigation when it has a duty to investigate, evaluate[,] and make a decision with respect to claims made on it by its insureds." Shaffer v. State Farm Mut. Auto. Ins. Co., No. 13–1837, 2014 WL 931101, at *2 (M.D. Pa. Mar. 10, 2014) (citation omitted); Robertson v. Allstate Ins. Co., No. 98–4909, 1999 WL 179754, at *3 (E.D. Pa. Mar. 10, 1999) (same). This does not mean, however, that the work

---

[12] While Rule 26 refers only to "documents and tangible things," "work product protection extends to both tangible and intangible work product." In re Cendant Corp. Sec. Litig., 343 F.3d 658, 662 (3d Cir. 2003) (citing Hickman v. Taylor, 329 U.S. 495, 510-11 (1947)).

11

product doctrine is wholly inapplicable to insurers' claims files. See Robertson, 1999 WL 179574, at *3 (noting a "mere claim of bad faith is not enough to shatter the work-product privilege"); Garvey, 167 F.R.D. at 394 (holding insurer properly withheld certain claims file documents based on the work product doctrine). Rather, "[a]t some point in its investigation, . . . an insurance company's activity shifts from mere claims evaluation to an anticipation of litigation."

Borgia, 2014 WL 4375643, at *3.

Plaintiffs' contention that they are entitled to, among other things, Allstate's "entire claims and investigation file,"[13] because all of that information was created in the ordinary course of business is therefore untenable. See id. at *4 (rejecting the argument that "documents reflecting [the insurer's] evaluation of the claim are not protected by the work product doctrine because such documents 'would have been prepared in the ordinary course of business anyways'"). Whether Plaintiffs may be entitled to a subset of that information would hinge upon a fact-specific inquiry into the nature of the information that they seek, when Allstate reasonably anticipated litigation, Plaintiffs' need for the particular information, and whether they can obtain the information through other means. See United States v. Rockwell Int'l, 897 F.2d 1255, 1266 (3d Cir. 1990) (recognizing that "[t]he question of whether a document was prepared in anticipation of litigation is often a difficult factual matter"). Resolving those questions may also call for a review of the particular information in camera. By taking the position that Allstate's work product objections are categorically improper rather than focusing on any particular materials they seek and their need for them, Plaintiffs' motion has not supplied the information necessary for the Court to make that assessment.[14] Plaintiffs' motion also fails to acknowledge

---

[13] Pls.' Mem. Supp. Mot. Compel Ex. F, at 2, ECF No. 27-7.

[14] In addition to arguing that the discovery they seek is not eligible for work product protection because it was created in the ordinary course of business, Plaintiffs also appear to contend that work product protection is claim-specific, meaning that materials that a party produced in anticipation of a dispute over one claim can be discovered if they are relevant to different claim in the litigation. See Mem. Supp. Mot. Compel 6, ECF No. 27-1 ("Allstate merely suggests that this work product privilege, which arguably (and only arguably) is applicable to the UIM claim, . . . [is also] applicable to the bad faith claim since the two causes of action are joined in the present litigation."). Plaintiffs suggest that Allstate is engaging in a "legal sleight of hand" by attempting to shield information prepared

that Allstate has raised other, non-work-product-based objections to some of the discovery that Plaintiffs seek to have the Court compel.[15] Accordingly, Plaintiffs' motion is denied without prejudice to their right to submit a future motion, if necessary, that focuses on the particular information that Plaintiffs seek. See Consugar v. Nationwide Ins. Co. of Am., No. 3:10cv2084, 2011 WL 2360208, at *3 (M.D. Pa. June 9, 2011) ("While defendant may assert privilege over the case file plaintiff may, of course, challenge those assertions through an appropriate motion with the court. Plaintiff has not done so here, instead focusing on the entire file and arguing that no privilege exists to cover any of the material in the file. The court cannot make a decision on whether particular documents in the file are subject to privilege; such an assessment would require a motion that describes the particular documents at issue and an in camera inspection."). The burden of justifying any invocation of the work product protection remains with Allstate. Conoco Inc. v. U.S. Dep't of Justice, 687 F.2d 724, 730 (3d Cir. 1982).

At this time the Court will, however, address one aspect of the scope of work product protection available to Allstate. A critical determination that must be made is when Allstate reasonably anticipated that it would find itself involved in litigation with its insured, because "materials prepared before [that] date cannot 'fairly be said to have been prepared or obtained

---

in anticipation of litigation over the breach of contract claim from discovery requests Plaintiffs have served in connection with their bad faith claim.
  Such an understanding of the work product protection misapprehends the reason why work product is protected from disclosure. The work product doctrine creates a "privileged area" where a party and its counsel can analyze and prepare a case. See In re Cendant Corp. Sec. Litig., 343 F.3d 658, 661-62 (3d Cir. 2003) (quoting United States v. Nobles, 422 U.S. 225, 238 (1975)). It matters not that Allstate may have prepared the work product with an eye toward only one of the claims in the action; disclosure of those materials now would open the door to that privileged area during the very litigation for which the work product was prepared. See FTC v. Grolier, Inc., 462 U.S. 19, 30 (1983) (Brennan, J., concurring in part and concurring in the judgment) ("[T]he need to protect . . . work product is at its greatest when the litigation with regard to which the work product was prepared is still in progress."). Plaintiffs' position also fails to account for the plain text of Rule 26, which protects from disclosure all "documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative," without regard for whether those materials were prepared in anticipation of litigation over the particular claim to which an opposing party believes they are relevant. See Grolier, 462 U.S. at 25 (majority opinion) (observing that "the literal language of the Rule protects materials prepared for any litigation or trial as long as they were prepared by or for a party" to the litigation in which the materials are being sought).
[15] See, e.g., Pls.' Mem. Supp. Mot. Compel Ex. G, ECF Nos. 27-8, 27-9.

because of the prospect of litigation.'" See Borgia, 2014 WL 4375643, at *4 (quoting In re Grand Jury Proceedings, 604 F.2d at 803). Allstate contends that this moment arrived on November 12, 2012, when then-counsel to Plaintiffs sent Allstate a letter "demand[ing] that Allstate tender the policy limits of $200,000 for underinsurance within thirty (30) days" or else the claim for benefits "[would] be withdrawn and the controversy [would] be litigated (including a breach of fiduciary duty / bad faith claim)."[16] Plaintiffs disagree. They argue that Allstate had not yet reasonably anticipated litigation on that date because Kevin Broadhead, Allstate's claims adjuster, sent a letter to Plaintiffs' counsel that same day stating that he needed additional information about Plaintiffs' medical treatment records in order for Allstate to "continue [its] review of the claim."[17] The next day, Plaintiffs provided Allstate with those records, and two days after that, on November 15, 2012, Allstate extended a settlement offer to Plaintiffs in the amount of $25,000.[18] Plaintiffs contend that during those intervening days, Allstate was still in the process of assessing the value of their claim through its review of the pertinent medical records and had not yet anticipated that litigation would follow.

Plaintiffs have the more persuasive argument. While Allstate contends that it reasonably anticipated litigation on November 12, it did not receive the medical treatment records that were necessary for it to "properly evaluate [Plaintiff's] bodily injury claim"[19] until November 14. According to Mr. Broadhead, he "was unable to evaluate the UIM claim for settlement purposes"[20] without that information, which is consistent with the fact that he did not extend a settlement offer to Plaintiffs until November 15—after he had reviewed the records. While Mr. Broadhead claims that he reasonably anticipated litigation from the moment he received

---

[16] See Broadhead Decl. Ex. 2, ECF No. 29-1.
[17] See Broadhead Decl. Ex. 1, ECF No. 29-1.
[18] Broadhead Decl. ¶¶ 11-12, ECF No. 29-1.
[19] See Broadhead Decl. Ex. 1.
[20] Broadhead Decl. ¶ 8.

Plaintiffs' November 12 ultimatum,[21] he does not explain how he knew, prior to reviewing the full medical treatment records that he requested, that their demand for payment in the amount of the policy limit was not warranted. A party's subjective anticipation of litigation must be objectively reasonable, see Martin, 983 F.2d at 1260, and while the Court declines to determine at this juncture whether Allstate reasonably anticipated litigation by November 15, 2012,[22] Allstate has not shown that it reasonably anticipated litigation before that date. See Borgia, 2014 WL 4375643, at *3 (finding that the plaintiffs' insurer reasonably anticipated litigation when it was apparent that "[the plaintiffs'] demand far exceeded [the insurer's] valuation of the claim"). Allstate therefore must provide Plaintiffs with any responsive discovery created prior to November 15, 2015, that Allstate has withheld solely on the basis of work product protection.[23] See id. at *4. Plaintiffs may also reconvene the deposition of Mr. Broadhead because the deposition transcript reveals that counsel instructed Mr. Broadhead not to answer certain questions about the steps Allstate took to assess Plaintiffs' claims for underinsured motorist benefits prior to November 15, 2012, on the basis of work product protection.[24] See Fed. R. Civ. P. 30(a)(2)(A)(ii).

That Allstate is entitled to invoke the work product protection does not mean that Plaintiffs are necessarily foreclosed from discovering any of those materials, because "the work product doctrine is not an absolute bar to discovery of materials prepared in anticipation of

---

[21] Id. ¶ 10.

[22] Allstate does not address the tension between its claim that it reasonably anticipated litigation in November 2012 and the fact that this suit did not commence until over two years later. While Mr. Broadhead claims that he believed on November 12, 2012, that "it was likely that [Plaintiffs'] UIM claim would have to be resolved by litigation," according to Plaintiffs he proceeded to send no fewer than ten letters over the next two years informing them that Allstate's investigation of their claim for benefits was still ongoing. See Pls.' Mem. Opp'n Mot. Sever and Stay 10-14.

[23] As the Court has observed, Allstate has objected to some of the discovery Plaintiffs seek on grounds other than work product. The parties have not addressed those objections, and the Court therefore expresses no opinion on their merits.

[24] See Broadhead Dep. 45:1-13, ECF No. 27-10.

litigation." In re Cendant, 343 F.3d at 663. If they are able to show that they have a substantial need for particular materials and "cannot, without undue hardship, obtain their substantial equivalent by other means," Plaintiffs may be permitted to obtain the discovery they seek, provided Plaintiffs are not seeking mental impressions, conclusions, opinions, or legal theories of Allstate's attorneys or other representatives. See Fed. R. Civ. P. 26(b)(3)(A)-(B); see In re Cendant, 343 F.3d at 663 ("Rule 26(b)(3) establishes two tiers of protection: first, work prepared in anticipation of litigation by an attorney or his agent is discoverable only upon a showing of need and hardship; second, 'core' or 'opinion' work product . . . is 'generally afforded near absolute protection from discovery.'" (quoting In re Ford Motor Co., 110 F.3d 954, 962 n.7 (3d Cir. 1997))). Other courts that have considered these questions in the context of bad faith claims have observed that deposition testimony from the insurer's employees may be a viable alternative source of evidence. See, e.g., Borgia, 2014 WL 4375643, at *5 (declining to compel an insurer to disclose work product because "depositions of [the insurer's] claims personnel remain[ed] a viable means of obtaining at least some of the information" the plaintiffs sought); McCrink v. Peoples Benefit Life Ins. Co., No. Civ.A.2:04CV01068LDD, 2004 WL 2743420, at *7 (E.D. Pa. Nov. 29, 2004) (finding that plaintiffs failed to make a sufficient showing to overcome an insurer's work product protection, "particularly [because] the plaintiffs have had the opportunity to depose the claims officials who handled the claim"); Garvey, 167 F.R.D. at 394 (declining to compel an insurer to disclose, among other things, all of the documents in its claims file because the plaintiff "had the ability to conduct discovery, which included taking the depositions of the defendant's agents").

## VI. Order

Accordingly, this 19th day of January, 2016, **IT IS ORDERED** as follows:

1. Allstate's Motion to Reconsider the Court's February 9, 2015 Order Denying Its Motion to Sever and Stay Plaintiffs' Bad Faith Claim, ECF No. 26, is **DENIED**.

2. Plaintiffs' Motion to Compel, ECF No. 27, is **GRANTED IN PART**. No later than **Friday, February 5, 2016**, Allstate shall respond to any discovery requests seeking information dated prior to November 15, 2012, to which Allstate objected solely on the grounds of the work product doctrine. Plaintiffs may also reconvene the deposition of Kevin Broadhead. In all other respects, Plaintiffs' Motion is **DENIED**.

BY THE COURT:

*/s/ Joseph F. Leeson, Jr.*_____
JOSEPH F. LEESON, JR.
United States District Judge